FD-1057 (Rev. 5-8-10)

UNCLASSIFIED


OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION
## Electronic Communication

**Title:** (U) Meeting with Vermont Agency of Commerce and Community Development

**Date:** 03/14/2016

**From:** ALBANY
     AL-8
     **Contact:** EMMONS JENNIE MCGLYNN, 802-863-6316

**Approved By:** SSRA RACHEK DANIEL GERARD

**Drafted By:** EMMONS JENNIE MCGLYNN

**Case ID #:** 318B-AL-6464304    (U) ARIEL QUIROS;
                                       SECURITIES FRAUD

**Synopsis:** (U) Meeting with Vermont Agency of Commerce and Community Development

**Full Investigation Initiated:** 06/16/2015

**Enclosure(s):** Enclosed are the following items:
1. (U) Original notes

**Details:**

On 3/9/1026, the writer, AUSA Genie Cowles, FA Greg Simmons and IRS SA John Schroeder met with John W. Kessler, General Counsel, Vermont Agency of Commerce and Community Development (ACCD) and David Cassady of the Vermont Department of Financial Regulation (DFR).

The purpose of the meeting was for ACCD and DFR to describe the history and workings of the Vermont Regional Center and its involvement with the Jay Peak/Quiros EB-5 projects.

The following is a summary of information provided:

John Kessler has been with ACCD since 1997. Before that time, he worked for the Vermont Attorney General's office. For a period of time Kessler worked with Brent Raymond at ACCD.

UNCLASSIFIED

0462559
0462559

**UNCLASSIFIED**

Title:  (U) Meeting with Vermont Agency of Commerce and Community Development
Re:  318B-AL-6464304, 03/14/2016

    In June 1997, Vermont was designated a Regional Center by USCIS. Bill Stenger was involved in the original designation.

    Having a Regional Center designation means (for Vermont) that the state is an entity authorized by USCIS to engage in EB-5 projects. Most Regional Centers in the rest of the USA are private and act like brokers. Michigan is the only other state with a Regional Center like Vermont. There are about 700 Regional Centers in the USA and 1,000s of EB-5 projects.

    The May 2013 USCIS policy memo is an important document in terms of understanding how the EB-5 Regional Center program should be run. There has been very few federal rules to guide Regional Centers for a federal program of this magnitude.

    The evolution of the rules for EB-5 project has gone from very loose to very strict. The staff at the federal level and at the state level for the EB-5 program has increased over time with the growth of the program. 2012 was the year that things changed with the failure of the Chicago Convention Center EB-5 project.

    Regional Centers partner with developers for EB-5 projects. Developers may raise money for an potential EB-5 project, but without Regional Center approval, an I-526 petition cannot be filed.

    For Vermont's Regional Center, approval is now finalized by the signing of an MOU between the Regional Center and the developer. Earlier EB-5 projects were approved by the Vermont Regional Center without a MOU in place. USCIS rules had not required an MOU, but at some point Vermont learned this was a good practice.

    Once a project is approved by the Regional Center, a first I-526 petition for the project can be filed with USCIS. The receipt of the first one or two I-526s will trigger the USCIS to review the EB-5 project. With USCIS approval of project through the intial petition(s), subsequent petitions can be filed for that project without requiring the project to be reviewed again.

**UNCLASSIFIED**

0462560
0462560

UNCLASSIFIED.

Title: (U) Meeting with Vermont Agency of Commerce and Community Development
Re: 318B-AL-6464304, 03/14/2016

In December 2014, Vermont DFR got involved in the oversight of the Vermont EB-5 projects.

Kessler is the author of the Jay Peak MOUs. MOUs provide oversight provisions, such as quarterly site visits. The MOUs also have termination clauses. Over the years, the MOUs became more detailed, in particular to avoid problems that came up with other projects. Due to these insights over time, all of the Jay Peak MOUs have different termination agreements.

The Regional Center has the authority to terminate a project based on a violation of the MOU. USCIS must abide by its ruling to terminate a project.

When the Anc Bio project was being reissued (the project was approved by the Regional Center and then shelved for several years), the Regional Center required that a new MOU be created for the project. The new MOU had to contain language that the Anc Bio offering would comply with state and federal securities laws. In late 2012, this MOU was refreshed.

PPMs are drafted by attorneys for the projects.

Anc Bio was suspended because the project did not have a current PPM. The Anc Bio project's money is supposed to be in escrow at this time.

The Jay Peak EB-5 projects did not occur one after the other. The projects came in clumps after the Jay Peak project principals realized they had easy access to funding, or so it seemed.

Bill Stenger removed the limited partners stakes in Phase I and replaced them with an unsecured loans. This angered Phase I investors. ACCD and DFR has reviewed this matter and cannot find a means of recourse for the investors in terms of state action. Kessler observed that the Phase I investors were not notified of this change until after Stenger had returned from an overseas EB-5 investor-recruitment trip.

0462561
0462561

UNCLASSIFIED

Title:  (U) Meeting with Vermont Agency of Commerce and Community Development
Re:  318B-AL-6464304, 03/14/2016

Kessler believes the delay was deliberate so that potential overseas investors would not be influenced by any negative information about the Jay Peak projects.

Kessler's research into Ike Lee's background indicates that his credentials have been exaggerated in Jay Peak promotional materials. In particular, some materials have indicated that he is a Harvard graduate, which does not appear to be true. Lee is now with a company called ▮▮▮▮▮ as well as with Anc Bio. Ike Lee's true biographical information may be found in a University of California grant application.

Kessler became aware of a letter, pertaining to the Anc Bio project, drafted by Jake Lee on University of Vermont letterhead, which Kessler found highly inappropriate.

The questions that remain about AnC Bio include:

The biotechnology purportedly acquired by AnC Bio has not been verified. The state has not been able to obtain records that show that the intellectual property is registered. AnC Bio was to pay $10,000,000 for the intellectual property, but this payment was not made, and AnC Bio Korea has provided AnC Bio (Vermont) with "debt-forgiveness."

The AnC Bio equipment that is being acquired from AnC Bio Korea is not understood. $40,000,000 in equipment is purportedly to be purchased and a $12,000,000 down payment has been made. Some questions that remain include: What equipment was bought, what has been received, how is this equipment valued, and where did the money go? The rest of the $40,000,000 is supposed to be in JCM's possession.

A question regarding other Jay Peak EB-5 projects, which has not been answered by the state, is whether or not the hotels and other Jay Peak structures were built to the specifications described in the offerings (i.e., in terms of number of rooms or square footage). There

UNCLASSIFIED

0462562
0462562

UNCLASSIFIED

Title: (U) Meeting with Vermont Agency of Commerce and Community Development
Re: 318B-AL-6464304, 03/14/2016

has been unverified information that the Stateside project is 30 rooms short of what was described. Kessler's efforts to investigate this question through fire safety records have been unsuccessful.

The state believes that the 10 jobs counted for the EB-5 projects have been shifted from project to project at Jay Peak. Jobs are not allowed to be "borrowed" from different projects. This issue has not been examined.

As far as ACCD/DFR is aware, there has never been an official audit of the Jay Peak EB-5 projects. The Miami CPA firm used for the Jay Peak EB-5 projects has not been contacted by the state.

There has been no official interactions, or any drafting of MOUs at the Regional Center regarding other proposed Stenger/Quiros EB-5 projects, such as the airport of the Newport Renaissance project. These are projects which have been talked about publicly by Jay Peak principals, but no steps have been made with the Regional Center to move these projects forward.

An economist by the name of Scott Barnheart (phonetic) has done an evaluation of the jobs at Q-Burke.

Heather Whipkey was the personal largely responsible for the internal Jay Peak accounting. She no longer works for Jay Peak.

Alex MacLean was a person who was hired by Jay Peak to gain access to the state government.

♦♦

UNCLASSIFIED

5

0462563
0462563