FD-302 (Rev. 5-8-10)

- 1 of 5 -


OFFICIAL RECORD

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   03/01/2019

Susan Donegan, date of birth (DOB) ▇▇▇▇▇, was interviewed via video conference at the USAO – District of Vermont office located at 14 Elmwood Avenue, 3rd Floor, Burlington, VT 05401. Present for the interview was: AUSA Paul Van De Graaf, AUSA Nicole Cate, and FoA Gregory Simmons. Donegan provided the following information:

Donegan was the former Commissioner of the Vermont Department of Financial Regulation (VDFR). During Donegan's time as Commissioner, Donegan was instructed by Governor Peter Shumlin to assist with the oversight of the EB-5 program for Jay Peak (JP). VDFR became involved with the EB-5 program oversight in early 2015. Around this time, Michael Pieciak [Deputy Commissioner of VDFR] traveled down to Miami to meet with the SEC. The originating agency that provided oversight over the JP EB-5 program is the Vermont Agency of Commerce & Community Development (ACCD). ACCD did not have much oversight power whereas VDFR did. There were two individuals that comprised ACCD which included counsel [name unknown] and one other gentleman [name unknown]. ACCD did not have the resources nor expertise to provide oversight on such a large project. The EB-5 JP project included securities laws to which Vermont would seek advice from advisors that sit in Boston.

Both Patricia [LN: Moulton] and Donegan were heavily involved with the Memorandum of Understanding (MOU) and the writing for the JP EB-5 projects. Donegan was in charge of supervising the statutory framework for VDFR. Donegan designated who was going to do what in regards to providing securities oversight on the EB-5 program. She pulled personnel from ACCD and hired additional individuals to help out with the EB-5 oversight of JP. The EB-5 team was in charge of reviewing new applications and monitoring existing ones.

The VDFR EB-5 team oversaw the AnC Bio, Q-Burke, and other current EB-5 projects and how each of the projects would proceed going forward. The disclosure documents that were provided by JP were garbage. Bill Stenger floated in and out and was the voice of JP. Donegan had informed Stenger there were things the EB-5 team had to evaluate. When the VDFR team first became involved with overseeing the JP EB-5 program, Donegan had no thought of investigating JP for any wrong doing, just plain oversight

| | Burlington, Vermont, United States (, Other (Video |
|---|---|
| Investigation on  01/25/2019  at | Conference)) |

File #  318B-AL-6464304                                                          Date drafted  01/31/2019

by  SIMMONS GREGORY

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

5759551

FD-302a (Rev. 05-08-10)

318B-AL-6464304

Continuation of FD-302 of (U) Susan Donegan - Interview , On 01/25/2019 , Page 2 of 5

responsibility. Donegan provided close oversight over the AnC Bio offering documents.

The EB-5 program was a new program for VDFR. There were a couple other active EB-5 programs at the time operating outside of JP to which one was located in Stowe, VT. JP was instructed to submit financials to VDFR. JP never had to submit financials to ACCD. EB-5 projects other than JP never had any issues submitting financials. After these requests were made, JP would not really provide financial docs, but rather would provide run-around documents that didn't fulfill VDFR's financial requests.

Donegan had never met Stenger nor knew of the EB-5 program before getting involved in providing oversight as VDFR Commissioner.

Donegan was shown a document with Bates #USAO-EXEC00025282 - USAO-EXEC00025284 [email dated March 8, 2015]. Donegan informed investigators that Stenger would promise the stars, moon, and sun and then gives nothing. Stenger was known for dragging his feet and not delivering on things. Donegan started to document this pattern in February 2015. Donegan started to believe that not only was Stenger not cooperating, he was obstructing.

Donegan was shown a document with Bates #5334649-5334650 [letter dated 3/9/2015 addressed to Donegan and signed by Stenger]. Donegan was then shown documents with Bates #000745-000746 [legal and business rationales for expenditures to date involving AnC Bio project] and Bates #USAO-DFR00129543 - USAO-DFR00129545 [AnC Bio expenditure chart]. The document with Bates #000745 discussed the $41.5 million. Donegan stated JP refused to give access to VDFR.

Donegan was shown a document with Bates #5335317-5335321 [letter agreement dated 3/11/2015 between VDFR and JP]. Investigators read Roman numerals i & iia that can be found on Bates #5335318 to Donegan. Donegan agreed with the two Roman numeral statements. Donegan confirmed she was the only individual that signed the agreement. Donegan's office then received a response letter dated 3/16/2015 from JP with bates #5336281. Donegan's office then replied to Bates #5336281 letter with a new letter that can be found on Bates #5744074.03. Donegan refused to budge on any financial requests regarding JP.

VDFR soon realized JP was not going to provide the appropriate financial documentation so VDFR began subpoenaing JP's bank account records to include receiving weekly balances on JP's bank accounts.

JP lodged a complaint with the Governor Shumlin's office alleging VDFR was blocking JP from moving forward on their EB-5 projects. The Governor then

FD-302a (Rev. 05-08-10)

318B-AL-6464304

Continuation of FD-302 of (U) Susan Donegan - Interview ,On 01/25/2019 ,Page 3 of 5

held a meeting in his office with the following individuals present: William Kelly, Ariel Quiros, Stenger, Elizabeth Miller, Moulton, and Donegan. The Governor's meeting took place on 3/27/2015. Throughout the meeting, Kelly was acting in the capacity of Quiros' lawyer. JP's pitch to the Governor was that JP needed the EB-5 money now and couldn't afford to slow down on the projects. JP was creating jobs, creating phenomenal products, and bringing labs to Vermont. JP personnel informed the Governor that Donegan was standing in the way of JP's progress. In addition, JP contractors needed to be paid.

JP did not want to sign an agreement or anything during the Governor's meeting. JP wanted to provide alternative documents. At this point, Donegan and her department highly suspected fraud regarding the JP projects. Donegan was trying to buy time with getting records from both Peoples United Bank and Raymond James and reviewing them swiftly. VDFR had to hire outside accountants to assist with the analysis which was funded by Vermont's state budget.

Donegan had a total of two private meetings with the Governor. Earlier on, Donegan attended a meeting with the Governor and Moulton. The second meeting was between Donegan and the Governor. The Governor knew Donegan's opinion regarding the JP projects. The Governor and Donegan disagreed with each other on how to proceed going forward with the JP EB-5 projects. The Governor was trying to establish a work around that both parties could agree to. One of the private meetings occurred immediately after the 3/27/2015 Governor's office meeting.

Donegan had visited both project sites to include AnC Bio and Q-Burke. AnC Bio just had a hole in the ground and they were trying to raise more money from Chinese investors. On the other hand, the Q-Burke project was just about finished. The Governor was receiving intense pressure to include both economic and political reasons. The Governor became fixated on the Q-Burke project. The Governor was receiving calls from both contractors and local representatives regarding the Q-Burke project. Donegan agreed to treat the two projects [AnC Bio & Q-Burke] separately. Although, Donegan was still hesitant regarding both projects.

On 4/4/2015, Donegan threatened to resign if there was no escrow agreement put in place for the AnC Bio project. After Donegan threatened to resign, Donegan was informed by the Governor's office that JP would agree to the escrow arrangement so Donegan continued to stay on to run VDFR. Donegan believes a signed escrow agreement does exist. The money was held in escrow at People's United Bank.

The Private Placement Memorandum (PPM) had to be cleaned up after the Governor's meeting and was cleaned up rather quickly.

5759551.03

FD-302a (Rev. 05-08-10)

318B-AL-6464304

Continuation of FD-302 of (U) Susan Donegan - Interview , On 01/25/2019 , Page 4 of 5

Donegan was asked about a document with Bates #USAO-DFR00102319 - USAO-DFR00102320 [email dated 3/27/2015 from Donegan sent to Kelly]. Donegan confirmed that she prepared this document in lieu of not having a signed letter agreement with JP personnel.

Donegan pointed out a document with Bates #USAO-DFR00102385. The document was discussing how the Q-Burke PPM has not been approved yet. Donegan's first concern was the AnC Bio Project. The Governor did not want any restrictions on the JP projects. Donegan was concerned about the second PPM regarding AnC Bio. Patrick Leahy's office and the Vermont State Legislators were on the Governor's back trying to get the JP projects to move along accordingly.

Donegan was asked about a document with Bates #5020365, specifically in regards to paragraph #4. Donegan confirmed that each investor's investment shall be maintained in an escrow account and only released to the partnership upon the approval of the investor's I-526 petition or if the State of Vermont no longer requires the escrow of investors' funds to exist.

Donegan was asked about a document with Bates #USAO-EXEC00022521 [email dated 4/11/2015 from Donegan sent to Miller & Sarah London]. Donegan was raising several concerns in this email. Between March - April 2015, VDFR was doing a lot of work on the investigation involving JP. Donegan did not want the AnC Bio project to go forward. JP was not being forthcoming with documents that were being requested by VDFR. VDFR stopped fighting since they were getting documents via subpoena power. JP never got a proper financial review done by VDFR. VDFR was ready to go forward with a complaint.

Donegan was asked about a document with Bates #5379819-5379821 [letter dated 3/25/2016 addressed to Stenger and signed by Donegan]. Donegan stated JP kept saying they need new AnC Bio investor money. At this point, Donegan knew JP was a Ponzi scheme. VDFR started to work with the Vermont Attorney General (VAG) with Michael Pieciak working over at the VAG's office most days.

VDFR did not interview Quiros though Quiros attended a meeting along with Stenger, Kelly, Miller, and Donegan at VDFR. Bill Griffin got involved and had to approve any disbursements of Q-Burke money. Vermont ended up hiring a construction advisor/specialist to account for architectural expenses for the Q-Burke project.

5759551.04

FD-302a (Rev. 05-08-10)

318B-AL-6464304

Continuation of FD-302 of (U) Susan Donegan - Interview , On 01/25/2019 , Page 5 of 5

Donegan remembers JP trying to funnel funds to an old investor through a Peak CM payment. Donegan's office would not allow old investors to recoup their funds from new investor money. She added that this would be illegal.

Donegan was always getting lectured by Kelly.

Donegan was asked about document with Bates #5651635-5651636, paragraph #2 [email dated 4/28/2015]. Donegan vaguely remembers VDFR being concerned about the relationship between the General Partner (GP) and the Limited Partner (LP). Donegan reflected that the JP team would say things in emails that they were not actually doing. Donegan stated JP was avoiding their fiduciary duty.

Attached is:

1.) Writer's notes

2.) Bates #USAO-EXEC00025282 - USAO-EXEC00025284

3.) Bates #5334649 - 5334650

4.) Bates #0000745 - 0000746

5.) Bates #USAO-DFR00129543 - USAO-DFR00129545

6.) Bates #5335317 - 5335321

7.) Bates #5336281

8.) Bates #5744074.03

9.) Bates #USAO-DFR00102319 - USAO-DFR00102320

10.) Bates #USAO-DFR00102385

11.) Bates #5020365

12.) Bates #USAO-EXEC00022521

13.) Bates #5379819 - 5379821

14.) Bates #5651635 - 5651637

5759551.05