318B-AL-6464304 Serial 387

FD-302 (Rev. 5-8-10)

- 1 of 4 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry  06/22/2021

Patricia L. Moulton, born August 13, 1959, President of Vermont Technical College, former Secretary of the Vermont Agency of Commerce and Community Development (ACCD), ███████████████████████████████████████, ███████████████████████████████, was interviewed by DOJ Trial Attorney (TA) Jessee Alexander-Hoeppner, Assistant United States Attorney (AUSA) Van de Graaf, and FBI Special Agent Jennie Emmons. Also present, as legal counsel for Moulton, were Assistant Attorney Generals Bill Griffin and Kate Gallagher. The below-referenced Bates-numbered documents were provided to Griffin and Gallagher for Moulton's review. During the interview, an overview of these materials was conducted with Moulton.

TA Alexander-Hoeppner asked Moulton if she attended any of the press conferences in 2011/2012.

Moulton advised that she thinks she attended one of the press conferences at Jay Peak.

TA Alexander-Hoeppner referred to the set of documents (to include email and Moulton's handwritten notes) related to the June 27, 2014 meeting (and the time around this meeting) that included Moulton, Brent Raymond, Ariel Quiros (by phone), Bill Kelly and Bill Stenger.

Moulton advised that she definitely recalls that meeting and the notes will help refresh her recollection.

TA Alexander-Hoeppner referenced another meeting which occurred on December 29, 2014 that included Moulton, Raymond, Kelly, Stenger, David Gordon and Michael Scribner. TA Alexander-Hoeppner also asked about a meeting in which Stenger cried in Moulton's presence.

Moulton advised that that incident happened in a Department of Financial Regulation conference room. It might have happened around the time of the

---

Investigation on  06/18/2021   at   Burlington, Vermont, United States (In Person)

File #  318B-AL-6464304                                           Date drafted  06/21/2021

by  EMMONS JENNIE MCGLYNN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

318B-AL-6464304 Serial 387

318B-AL-6464304

Continuation of FD-302 of (U) Interview of Patricia Moulton, On 06/18/2021, Page 2 of 4

marketing hold. Stenger pulled on Moulton's heartstrings. He was saying things like "It's jobs in the Kingdom, Pat." Kelly was also playing on Moulton's emotions.

TA Alexander-Hoeppner noted that ACCD and DFR were figuring out what to do to protect new investors' money. Moulton and Susan Donegan had serious concerns and the governor was getting involved; and, there was tension between the oversight role and the marketing role.

Moulton advised that DFR took on the forensic accounting role and ACCD's job was to promote economic development—and not much beyond that.

AUSA Van de Graaf referenced the time before the March 27th meeting with the governor. DFR got involved in December after signing the MOU with ACCD. Between January and late March, DFR did a review and raised questions independently. In February, Donegan was trying to work out a deal with Jay Peak to audit various accounts. This effort was resisted and things stagnated. At the March 27th meeting, Quiros, Kelly, Stenger, Donegan, Liz Miller and Moulton were present.

Moulton advised that Quiros brought a prop (a folder with papers inside) into the meeting, which he claimed contained materials related to a lawsuit he was planning to file if things did not go his way. Quiros and the governor went off separately to room at some point. Donegan was not yet prepared to tell the governor she was sure something was wrong.

AUSA Van de Graaf observed that Stenger was trying to deal with Moulton directly and on a personal level in the late 2014/early 2015 time period (and referenced three memos from Stenger to Moulton).

Moulton advised that Stenger was trying to take advantage of their personal relationship. And, when the state asked questions, the Jay Peak team would give partial answers.

AUSA Van de Graaf referred to the Tram Haus Lodge/Phase I complaints and controversy, noting that questions were asked about the misuse of funds and about a margin loan.

Moulton advised that ███████ provided a margin loan statement. At the time, Moulton did not know what a margin loan was. ACCD's only securities

FD-302a (Rev. 5-8-10)

318B-AL-6464304 Serial 387

318B-AL-6464304

Continuation of FD-302 of (U) Interview of Patricia Moulton , On 06/18/2021 , Page 3 of 4

person was Raymond.

AUSA Van de Graaf noted that the margin loan was explained by the Jay Peak team as being a instrument for liquidity, but that this explanation omitted that a loan was involved and the borrowed funds were spent on things beyond the project.

Moulton advised that ACCD did not have a regulatory role. ACCD's direction from USCIS was to promote job creation. Later, when more was understood, the governor wanted the state to wait for the SEC to make the first move. The state knew Burke was okay, but AnC Bio was a big question. Moulton remembers wondering at the time if they had the leverage to shut down AnC Bio.

The Bates-numbered documents previously referenced are as follows:

5768004
5290722
5746262
5746265
ACCD0008235
ACCD0008827
ACCD00008828
ACCD016514
USAO-DFR00008697
ACCD015824
USAO-DFR00008739
ACCD00005387
USAO-DFR00009059
ACCD013908
MIG-R-DISC-00007169
MIG-R-DISC-00046007
ACCD00007382
ACCD00005430
ACCD00005433
ACCD00005453
5767415
ACCD00005462
ACCD00007050
ACCD00005105

FD-302a (Rev. 5-8-10)                    318B-AL-6464304 Serial 387

318B-AL-6464304

Continuation of FD-302 of (U) Interview of Patricia Moulton , On 06/18/2021 , Page 4 of 4

ACCD00007173
0493438
ACCD015799
5372626